Kolin C. Tang (SBN 279834)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
1401 Dove St., Suite 540
Newport Beach, CA 92660
Telephone: (323) 510-4060
ktang@sfmslaw.com

James C. Shah (SBN 260435)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
35 E. State St.
Media, PA 19063
Telephone: (610) 891-9880
jshah@sfmslaw.com

Alexander H. Burke (pending *pro hac vice* admission)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF HANCOCK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON HEWITT TAX SERVICE INC.,<br>Defendant. | Case No. 2:19-cv-02602<br><br>**CLASS ACTION COMPLAINT**<br>**FOR:**<br><br>1. **VIOLATIONS OF**<br>    **47 U.S.C. § 227(b)(1)(A)(iii)**<br>2. **VIOLATIONS OF**<br>    **47 C.F.R. § 64.1200(d)**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**
-1-

1.     Plaintiff, Jeff Hancock ("Hancock" or "Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

2.     Plaintiff received unsolicited, autodialed text message calls over the past several years, urging him to have Defendant, Jackson Hewitt Tax Service, Inc. ("Jackson Hewitt" or "Defendant") do his taxes.

3.     Jackson Hewitt did not have prior express written consent to send these texts. Moreover, the texts Jackson Hewitt sent were impermissible because Defendant had a defective internal Do Not Call policy.

4.     Given that these violations are widespread, and that Jackson Hewitt has been sued multiple times for TCPA violations, a class action is the best means of obtaining redress for Defendant's illegal text messaging, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## PARTIES

5.     Plaintiff is a natural person residing in Williamson County, Texas, and is a "person" as defined by 47 U.S.C. § 153(39). Plaintiff, thus, is a citizen of Texas. At all relevant times, Plaintiff was the subscriber for the cellular telephone at issue.

6.     Jackson Hewitt is a Delaware corporation headquartered at 10 Exchange Place, 27th Floor, Jersey City, New Jersey 07302. Defendant, thus, is a citizen of Delaware and New Jersey. Upon information and belief, Jackson Hewitt maintains dozens of offices within this District, each of which benefits from its illegal telemarketing, and each of which was required to adhere to Jackson Hewitt's defective internal Do Not Call policy.

7. Non-party CallFire, Inc. d/b/a EZ Texting ("CallFire") is a Delaware corporation headquartered in this District, at 1410 2nd Street, Suite 200, Santa Monica, California 90401. CallFire, thus, is a citizen of Delaware and California. Jackson Hewitt hired CallFire to send the texts that are the subject of this case, and CallFire sent those texts from its offices within this District.

## JURISDCTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

9. Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a nationwide class, which will result in at least one class member residing in a state different from Defendant.

10. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[,]" and found that "[b]anning such automated or prerecorded telephone calls … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, §§ 2(5), 2(14) (1991) (codified at 47 U.S.C. § 227).

12. Some of the TCPA's most stringent restrictions pertain to calls

placed to cell phones: The statute broadly bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party.  47 U.S.C. § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.").  The FCC—charged by Congress to develop the rules and regulations implementing the TCPA, *see* 47 U.S.C. § 227(b)(2)—has further strengthened this prohibition; for autodialed or prerecorded voice telemarketing calls made to cell phones on or after October 16, 2013, prior express *written* consent is required. See 47 C.F.R. § 64.1200(a)(2). A text message is a "call" under the TCPA.  *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

13. The TCPA also prohibits initiating any telemarketing call unless the person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).  This includes, *inter alia*, having a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list, identifying the name of the caller during each call, the name of the person or entity on whose behalf the call was made, and associated phone or address information, and actually honoring do-not-call requests within a reasonable time from the date such request is made. *Id.*

14. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish

that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").

## FACTS

15. On about March 27, 2019, Jackson Hewitt sent Plaintiff a text message to his cell phone through its texting vendor, CallFire. A partial screen shot of this text message is attached as <u>Exhibit A</u>.

16. Around the time of the text, Plaintiff was dealing with a family tragedy, and the text added to the chaos of life during this difficult time.

17. This text message was sent for the purpose of encouraging Plaintiff to purchase Jackson Hewitt goods and services.

18. This was not the first text Defendant had sent Plaintiff. Jackson Hewitt sent Plaintiff's cell phone number several similar texts in the four years prior to the filing of this case.

19. In March 2019, Plaintiff called his local Jackson Hewitt office to complain. The person with whom Plaintiff spoke stated that the local office had received numerous complaints about these texts, and that they had come from the "corporate office." The employee at the local office promised to relay Plaintiff's concerns, and request not to be called, to "corporate."

20. Although the texts he received did not instruct him to do so, Plaintiff also tried reply-texting "Stop" in an attempt to make the texts cease.

21. Jackson Hewitt sent the texts that are the subject of this case using an automatic telephone dialing system, as that term is defined in the TCPA.

22. The texts that Jackson Hewitt sent Plaintiff were form communications that were sent to thousands of consumers with identical - or nearly identical - verbiage.

23. The texts that Jackson Hewitt sent Plaintiff were sent in "blasts" of multiple texts at once.

24. Upon information and belief, the texts were sent as follows: Jackson Hewitt provided – or uploaded – a list of phone numbers and other consumer information to CallFire, through the Internet.

25. Defendant set the parameters for texting, including computer commands and settings designed to prevent the sending of texts outside permissible contact hours, through a CallFire web portal. CallFire's computers used the data Jackson Hewitt provided to, for example, ensure that texts were not sent too early on the West Coast, or too late on the East Coast. This function is typically called "curfew."

26. CallFire's computers stored the numbers Jackson Hewitt provided, and automatically sent the texts – *i.e.*, made the calls that are the subject of this case – according to Jackson Hewitt's instructions.

27. CallFire's computers generated a sequence for sending the texts, based upon the demographic and other information Jackson Hewitt provided, and then automatically dialed those numbers.

28. Plaintiff and the class were damaged by these text messages, as their privacy was invaded (e.g., intrusion upon seclusion and trespass), they temporarily lost use of their phones, and they were forced to deal with these illegal messages.

## CLASS ACTION ALLEGATIONS

29. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a Rule 23(b)(3) (or, in the alternative, Rule 23(b)(2)) class consisting of:

> All persons in the United States (i) to whom a text was sent for the purpose of encouraging the purchase of Jackson Hewitt goods or services (ii) to a cellular telephone number, (iii) using the same or similar texting system as was used in the calls to Plaintiff, where (iv)

Jackson Hewitt did not have a signed writing authorizing automated telemarketing texts from Jackson Hewitt at the time such calls were made (the "Class").

Plaintiff alleges a sub-class of persons who, like Plaintiff, received two or more texts within a 12-month period (the "Sub-Class").

The Class and Sub-Class are collectively referred to herein as the "Class".

30. Upon information and belief, Jackson Hewitt texted more than 1,000 cellular telephone numbers for the purpose of encouraging the purchase of its goods and services in 2019, using the same or similar texting system as was used in the calls to Plaintiff, without prior written authorization.

31. Common questions of law or fact exist as to all members of the Class and Sub-Class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such common questions include, but are not limited to, the following:

    a. Whether the texts at issue used an "automatic telephone dialing system" or an "artificial or prerecorded voice" as such terms are defined or understood under the TCPA and applicable FCC regulations and orders;

    b. Whether Jackson Hewitt had "prior express written consent" to contact Plaintiff and the other members of the Class when causing calls to be made to such persons' cell phones using an automatic telephone dialing system or an artificial or prerecorded voice, pursuant to 47 C.F.R. § 64.1200(f)(8);

    c. Whether Jackson Hewitt implemented proper Do Not Call procedures under 47 C.F.R. § 64.1200(d); and

    d. Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the

CLASS ACTION COMPLAINT
-7-

other members of the Class are entitled to trebled damages under 47 U.S.C. §§ 227(b)(3) or 227(c)(5).

32. Plaintiff's claims are typical of the claims of the other members of the Class. The factual and legal bases of Jackson Hewitt's liability to Plaintiff and the other Class members are the same: Defendant violated the TCPA by sending texts to each member of the Class, including Plaintiff, using an automatic telephone dialing system, without the requisite permission.

33. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that might conflict with the interests of the Class, is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regard to the claims alleged herein.

34. Class action treatment is superior to all other alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action would entail. There are, on information and belief, thousands of members of the Class, such that joinder of all members is impracticable.

35. No difficulties are likely to be encountered in the management of this action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

36. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual Class members, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with

respect to individual Class members that would establish incompatible standards of conduct.

37. The identity of the Class is, on information and belief, readily identifiable from Defendant's and its vendors' records. CallFire's texting platform permits users to easily do sophisticated queries that will identify Class members. Moreover, Jackson Hewitt knows – or should know – which phone numbers it texted. Plaintiff thus anticipates issuing direct notice to all members of the Class identifiable through Defendant's records or those of its vendors, including by means of a reverse-lookup, if necessary, supplemented by internet or other form of publication notice.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Autodialed and/or Artificial or Prerecorded Voice Call Violations)

38. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

39. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

40. Jackson Hewitt initiated, or caused to be initiated, calls to the cellular telephone numbers of Plaintiff and the other members of the Class by using an automatic telephone dialing system, or an artificial voice.

41. These calls were made without regard to whether or not Defendant had previously obtained proper consent or permission from the called party to make such calls. Jackson Hewitt did not have prior express consent to call the cell phones of Plaintiff and the other members of the Class when the calls were made.

42. The texts Plaintiff and other Class members received did not properly explain how to opt-out of future texts, pursuant to 47 C.F.R. § 64.1200(b).

43. Defendant's calls and violations were negligent; alternatively, they were willful or knowing.

44. On information and belief, some of the calls to Plaintiff and the Class were made by vendors of Defendant. Defendant is liable for those calls, too.

45. As a result of Defendant's conduct and pursuant to Section 227(b)(3) of the TCPA, Plaintiff and the other members of the Class were harmed and are each entitled to a minimum of $500 in damages for each violation. Plaintiff and the Class are also entitled to an injunction against future calls. 47 U.S.C. § 227(b)(3).

46. Jackson Hewitt has been sued for TCPA violations before, and knows about the TCPA's restrictions. It elected to send the text messages described herein in spite of its knowledge and prior experience.

47. Because Defendant knew or should have known that Plaintiff and the other members of the Class had not given prior express consent to receive its text message calls to their cell phones—and/or willfully caused such calls to be made to the cell phones of Plaintiff and the other members of the Class without prior express consent—the Court should treble the amount of statutory damages available to Plaintiff and the other members of the Class, pursuant to Section 227(b)(3) of the TCPA.

48. Moreover, because Jackson Hewitt has been sued for TCPA violations before but failed to cease the illegal activity, it is clear that both money damages and injunctive relief are necessary to wrench proper compliance.

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests that the Court appoint Plaintiff as Class representative, appoint his

counsel as Class Counsel, and enter judgment against Defendant for:

    A.    Certification of the Class as alleged herein;

    B.    A declaration that Defendant violated the TCPA as to Plaintiff and the Class;

    C.    An injunction to prevent further violations;

    D.    Damages pursuant to 47 U.S.C. § 227(b)(3), as applicable;

    E.    Costs, expenses, and attorneys' fees, to the extent permitted by law; and

    F.    Such other or further relief as the Court deems just and proper.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do Not Call Violations)

49. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this Count II on behalf of himself and the Sub-Class.

50. The TCPA, 47 C.F.R. § 227(d), prohibits <u>all</u> telemarketing phone calls and text messages, unless the caller has, and honors, a written internal Do Not Call policy.

51. Jackson Hewitt's internal Do Not Call policy is posted on the Internet, but the policy states that it applies to Nevada residents only. *See* <u>Exhibit B</u>.

52. The policy states: "Depending on where you live, you may have additional privacy protections under some state laws."

53. While it is true that some states may afford internal Do Not Call protections, this written policy fails to notify consumers of their rights under federal law.

54. Even if Jackson Hewitt has another internal Do Not Call policy

designed to deal with the TCPA, the false statements in Exhibit B regarding consumers' Do Not Call rights, which are prominently posted on the Internet, overshadow any such policy: Of course, the federal TCPA requires *nationwide* compliance, not just state-by-state compliance.

55. Because Jackson Hewitt's internal Do Not Call policy is noncompliant with 47 C.F.R. § 64.1200(d), Jackson Hewitt was not allowed to send <u>any</u> text messages or make any calls, the purpose of which were to solicit sale of goods or services.

56. Plaintiff received more than one text on his cell phone within a 12-month period while Jackson Hewitt did not have proper Do Not Call policies. Indeed, as described above, when Plaintiff called to inquire about the texts, the local office took a long time to figure out what was going on, making it apparent that it had not been properly trained as to this telemarketing, or requests not to call.

57. Plaintiff and the Sub-Class were damaged by Jackson Hewitt's failure to maintain a proper internal Do Not Call policy, and/or to adhere to the one it had. Their privacy was invaded in receiving unsolicited calls, and they were not provided adequate or legal explanation of how to cause Jackson Hewitt to stop.

58. The violations described herein were reckless or intentional. Jackson Hewitt knows about the TCPA's requirements to have a valid internal Do Not Call policy, but has elected not to do so.

WHEREFORE, Plaintiff, individually and on behalf of the Sub-Class, requests that the Court appoint him as Class representative, appoint his counsel as Class Counsel, and enter judgment against Defendant for:

A. Certification of the Sub-Class as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff

|   |   |   |
|---|---|---|
| 1 |   | and the Sub-Class; |
| 2 | C. | An injunction to prevent further violations; |
| 3 | D. | Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable; |
| 4 | E. | Costs, expenses, and attorneys' fees, to the extent permitted by |
| 5 |   | law; and |
| 6 | F. | Such other or further relief as the Court deems just and proper. |

## JURY DEMAND

Plaintiff requests a jury trial as to all claims so triable.

Respectfully submitted,

JEFF HANCOCK, Individually and on Behalf of All Others Similarly Situated

Dated: April 5, 2019

By:   */s/ Kolin C. Tang*
    Kolin C. Tang (SBN 279834)
    SHEPHERD, FINKELMAN,
    MILLER & SHAH, LLP
    1401 Dove St., Suite 540
    Newport Beach, CA 92660
    Telephone: (323) 510-4060
    ktang@sfmslaw.com

    James C. Shah (SBN 260435)
    SHEPHERD, FINKELMAN,
    MILLER & SHAH, LLP
    35 E. State St.
    Media, PA 19063
    Telephone: (610) 891-9880
    jshah@sfmslaw.com

Alexander H. Burke
(pending *pro hac vice* admission)
BURKE LAW OFFICES, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawll.com

*Counsel for Plaintiff and the Proposed Class*

**CLASS ACTION COMPLAINT**
-14-