# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JEFF HANCOCK**, *Individually and on Behalf of All Others Similarly Situated,* | § § § | |
| v. | § § | NO. 1:19-CV-852-LY |
| **JACKSON HEWITT TAX SVC., INC.** | § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court is Jackson Hewitt's Renewed Motion to Strike Class Allegations, filed on September 26, 2019. Dkt. No. 46. The District Court referred the motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), Fed. R. Civ. P. 72, and Rule 1(c) of Appendix C of the Local Rules, on November 5, 2019. Dkt. No. 63.

## I. BACKGROUND

Jackson Hewitt provides computerized preparation of income taxes. Plaintiff Jeff Hancock alleges that he received unsolicited text messages from Jackson Hewitt in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 et seq., and seeks to represent a nationwide class of individuals who received similar texts. Dkt. No. 1. Hancock originally filed this action in the U.S. District Court for the Central District of California. *Id.* In response, Jackson Hewitt filed a motion to dismiss for lack of personal jurisdiction, to transfer to a federal court in Texas or New Jersey, or to strike Hancock's class allegations. Dkt. No. 21. The Central District of California transferred the action to this Court and without ruling on the motion to strike. Dkt. No. 36.

Jackson Hewitt filed the instant motion renewing its request. Dkt. No. 46. Jackson Hewitt incorporates its prior motion and supporting declarations (Dkt. No. 21), prior reply (Dkt. No. 32), and a notice correcting certain facts in its submissions, with a corrected declaration (Dkt. No. 35). It attaches these prior filings as exhibits. *See* Dkt. Nos. 46-1, 46-2, 46-3.

Jackson Hewitt moves the Court to strike Hancock's class allegations for one reason: Hancock signed a Taxpayer Information Form and Agreement that contains an express class action waiver ("the Agreement"). Dkt. No. 46-1 at 23-24. The Agreement is associated with the 2016 tax year filings for Hancock's mother, Reta Hancock, for whom he serves as legal guardian. *See* Dkt. No. 31-1 at 1 (Hancock Decl.); Dkt. No. 46-1 at 34 ¶ 4 (Langstaff Decl.). Jackson Hewitt filed a copy of the Agreement, which shows a signature by a J. Hancock—the first name is not legible after the first letter. Dkt. 70-1 at 2.[1] The unredacted Agreement does not provide any other indication of who signed the document, other than: "Taxpayer's Last Name: Hancock." Dkt. 70-1 at 2.

Hancock disputes that he ever signed the Agreement. He argues that the Agreement does not bind him because (1) the agreement was executed between Jackson Hewitt and his parents, (2) he personally did not sign it, and (3) any agreement was superseded by later agreements that did not contain a waiver. Dkt. No. 61. Hancock filed a declaration, which states:

> I am sure that I did not sign the "Taxpayer Information Form and Agreement" Jackson Hewitt filed as Dkt. No. 21-2, Langstaff Decl. Ex. 1. That document appears to contain an electronic "facsimile" signature on a form I did not sign. Indeed, if one reviews other documents from Jackson Hewitt's files for my mother's tax returns

---

[1] Jackson Hewitt originally filed the Agreement as Exhibit 1 to the first Declaration of Amori Langstaff. Dkt. No. 21-2. That copy of the Agreement was heavily redacted, and the redactions obscured the signature line. The Court ordered Jackson Hewitt to file an amended version and remove unnecessary redactions. Dkt. No. 68. Jackson Hewitt filed a less-redacted copy, which shows the signature by a J. Hancock. Dkt. No. 70-1.

2

> from that year, one can see that many of the signatures appear to be identical, although some seem to be sized smaller. Exhibit E. I did not authorize anyone to affix my name like this to these documents. I also note that each of the documents in the entire package has a date and time for the signatures, and that all of the signatures reference the same minute. I have never rushed through my mother's taxes, such that so many of my signatures could have all been made at the same minute.

Dkt. 31-1 at 2. Hancock maintains that the signature is not his. Dkt. 61 at 8.

## II. LEGAL STANDARD

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Delarue v. State Farm Lloyds*, No. 1:09-CV-237, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010) (citing *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). "There is a distinction between a motion to strike class action allegations at the pleadings stage and the actual class certification analysis." *Id.* (citing *Maldonado v. Ochsner Clinic Foundation*, 493 F.3d 521, 523 (5th Cir. 2007); *Pederson v. La. State Univ.*, 213 F.3d 858, 866 n.7 (5th Cir. 2000)). A court may strike class allegations when the issues are "plain enough from the pleadings." *Gant v. Whynotleaseit, LLC*, No. CV H-13-3657, 2014 WL 12606313, at *1 (S.D. Tex. Dec. 11, 2014), *report and recommendation adopted*, 2015 WL 12804529 (S.D. Tex. Jan. 16, 2015) (citing *Gen Tel. Co. of S.W. v. Falcon*, 457 U.S. 147 (1982); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)). For example, "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445.

## III.  DISCUSSION

Courts often deny motions to strike class allegations without prejudice to refiling when a defendant moves to strike those allegations before any discovery has taken place and there is insufficient evidence in the record for a court to make a determination.  *See, e.g.*, *Delarue*, 2010 WL 11530499, at *4; *Gant*, 2014 WL 12606313, at *2.  But in this situation, the disputed issue is not an element of class certification; the dispute is whether Hancock waived his right to file a class action in the first place.

Both parties have filed evidence in support of their position, and neither suggest how further discovery would assist the Court to resolve this narrow issue.  Relying on the facts in the record, Court finds Hancock is bound by the Agreement and its class action waiver.  The Agreement states, in bold and capital letters:

> **WAIVER OF JURY TRIAL AND PARTICIPATION IN CLASS ACTION.** WITH RESPECT TO ANY CLAIMS FOR MONEY DAMAGES AND/OR EQUITABLE OR INJUNCTIVE RELIEF, INCLUDING, BUT NOT LIMITED TO, ALL COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY CLAIMS THAT YOU MAY BRING AGAINST JACKSON HEWITT TAX SERVICE INC. . . . YOU ARE GIVING UP YOUR RIGHT . . . TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST THE JACKSON HEWITT SYSTEM.
>
> BY SIGNING BELOW, YOU AGREE TO THE TERMS OF THIS AGREEMENT, WHICH INCLUDES A WAIVER OF JURY TRIAL AND A WAIVER OF PARTICIPATION IN A CLASS ACTION, WHICH MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE.

Dkt. No. 70-1 at 2. Hancock's signature appears at the bottom of the same page. *Id.* In two rounds of briefing, Hancock offers no compelling evidence to invalidate the Agreement or the signature. Hancock's argument that he did not sign the taxpayer form is entirely implausible. In fact, Hancock's declaration otherwise supports a finding that he signed the Agreement. Apparently implying that Jackson Hewitt somehow improperly manufactured his signature, Hancock declares that his signature "appear[s] to be identical" with "many of the signatures" on his mother's tax returns from that year, with some "sized smaller," and that "all of the signatures reference the same minute." Dkt. 31-1 at 2. But rather than being suspicious as Hancocks suggests, it instead is wholly consistent with Hancock completing the forms by electronic signature, which would apply to multiple documents an identical digital signature with identical time stamps. Hancock also cites no authority in support of his claim that he is not bound by the Agreement because he signed it while acting in his capacity as a legal guardian.[2] Hancock's argument that a 2018 form supercedes the Agreement is also not persuasive. The form he offers—a 2018 Consent to Use of Tax Information—does not contain any indication that it would supercede a 2016 Taxpayer Information Form and Agreement, which is an entirely different type of agreement. *Compare* Dkt. No. 31-8; Dkt. No. 46-1 at 23-24. Jackson Hewitt has shown that Hancock signed the Agreement containing the class action waiver, and despite having signed it as the guardian for his mother, it binds him individually when he brings an individual suit arising from Jackson Hewitt sending him texts to a number he provided in those same transactions. Unsolicited texts messages are indeed annoying.

---

[2] Hancock's only cited authority on this point does not support his position. He cites *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc*., 334 F.3d 423, 428 (5th Cir. 2003), but that case addressed an agent's *own* liability; not an agent's rights to assert a claim. *See id.* ("It is well established that an agent acting for a disclosed principal is not liable for claims arising out of contracts executed by the agent on behalf of its principal.").

But having to comb through the voluminous record of this case to find this information has been even more so.

Because Hancock's claims arise from an agreement that he signed that contains a class action waiver, and Hancock has not shown any reason why the wavier does not apply here, the Court finds that Hancock is bound by that waiver. Absent an applicable exception, a class action waiver "must be enforced according to its terms." *Convergys Corp. v. Nat'l Labor Relations Bd.*, 866 F.3d 635, 638 (5th Cir. 2017) (quoting *D. R. Horton, Inc. v. NLRB*, 737 F.3d 344, 362 (5th Cir. 2013). The undersigned therefore recommends that the District Court grant the motion to strike the class allegations.

## IV.  ORDER AND RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Jackson Hewitt's Motion to Strike the Class Allegations (Dkt. No. 46). The undersigned **FURTHER RECOMMENDS** that the District Court **STRIKE** the class allegations from the original complaint (Dkt. No. 1) and **ORDER** Hancock to file an amended complaint removing those claims.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo*

review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 14th day of May, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE